The second case this morning is 5-23-0062, People v. Gibson. Arguing for the plaintiff appellant is Sidney Warda. Arguing for the defendant appellee is Richard Scott London. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Ms. Warda, are you ready to proceed? Good morning. Yes, Your Honor. You may do so. Thank you. Good morning. May it please the court, counsel. Morning. Sidney Warda for Mr. Darian Gibson. Mr. Gibson was convicted of three counts of aggravated reckless driving based on an accident where he was one of four occupants of a Chevy Impala that ran a stop sign and struck another vehicle, injuring that driver and her two children. The only issue at Mr. Gibson's trial was whether or not he was driving. On appeal, Mr. Gibson first argues that his conviction should be reversed because no rational trier of fact could have found that he was the driver based on the state's evidence here. Mr. Gibson consistently maintained he was not the driver. He told police at the scene he wasn't driving and at the hospital. He also testified that he was the front seat passenger of the Impala and Milando McMillian was driving. To support that he wasn't driving, a still photo from a Snapchat video taken 20 to 30 minutes before the crash showed that Mr. Gibson was in the passenger seat and Mr. McMillian was driving. Further, the Snapchat photo didn't have any time stamp on it, did it? No, Your Honor. However, the state didn't contest the veracity of the Snapchat photo. Okay, so the state admitted that that was a photograph taken on the day of? The state didn't elicit any testimony that would suggest anything different than what Mr. Gibson testified to. So it was just unrebutted in the record? Yes, Your Honor. Okay. I'm interested, I'm going to interrupt you because I'm interested in some facts and you're only given a short amount of time. I'm interested in the police officer who testified to this witness who was never identified. Tell me a little bit about that. Sure, Your Honor. This goes to Mr. Gibson's second issue. At trial, the state asked Mr. I'm sorry, Officer Joseph Cassidy, and I'm going to read from the record. While you were on scene, did a witness point him out to you as the driver? To which Cassidy responded, yes. We don't know at all who this witness was. Did they go on and have the police officer actually say that it was the defendant who was driving? Well, based on the way the questioning in the record reads, there's no question that the state's questioned Officer Cassidy was referring to Mr. Gibson. We're not contesting that this identification was going toward Mr. Gibson, only that it was inadmissible because we don't know who the declarant was. But we want to, but is it your position that the way the question came in, that the statement was admitted to prove the truth of the matter asserted, that is that the defendant was driving? Yes. Okay, and is there any doubt about the way that came in as that it's the defendant who was being identified there? There's no doubt that, yeah, Officer, yes, that Officer Joseph Cassidy was testifying that someone pointed out Mr. Gibson as the driver. That someone, oh, I'm sorry, Your Honor. I was just going to say that there was no objection to that question, was there? No. Okay, so we need to look at that from a plain air point of view. Is that your position? Yes, Your Honor. Either plain air or ineffective assistance of counsel would allow for review of this error as well. Okay. There was some testimony about your client's hair and whether the dreads were moving because of the way the car was swerving, is that correct? Yes, Your Honor. The state essentially argues that this aspect of the description conclusively proved that Mr. Gibson was driving. However, there is an exhibit that shows another occupant may have had a similar hairstyle, Nicholas Griffin, and further, the witness's descriptions here were unreliable in a few driver of the Impala, so their description of the driver as having dreads isn't reliable. Well, why not? Why isn't it reliable? Well, the opportunity that these witnesses had to view the Impala's driver was very limited. Their attentions were divided between driving their own vehicles, avoiding the fast-moving, swerving Impala, and the state's Exhibit 14, the Columbia Avenue video, shows just how fast the Chevy was moving and that it would be unreasonable to expect these witnesses to be able to identify the driver with any kind of certainty. More importantly, they didn't identify him at trial as the driver. Had they had an adequate opportunity to view him, they should have been able to identify Mr. Gibson at trial, but they were not. Well, how was the identification made at trial to link this defendant to the accident? Well, Your Honor, really, the smoking gun in this case was Officer Cassidy's testimony with regard to this unknown witness. It was the only evidence presented that anyone directly identified Mr. Gibson as the driver. Importantly, the jury couldn't tell who Officer Cassidy was referring to, and they asked during deliberations, Officer Cassidy testified that a witness identified defendant as driver, which witness? This shows the jury couldn't tell who the defendant was, and it shows that the jury focused on this improper testimony and zeroed in on it as the only identification of Mr. Gibson as the driver. So you would argue under at least plain error that this evidence was closely balanced? Yes. Yes, it was closely balanced. Okay. What about your third issue? The great bodily harm issue. Your Honor, this state here didn't prove that Risa Shimokawa, the driver, suffered great bodily harm. And our argument here is twofold. First, that because we didn't know in the first x-ray that she suffered a fractured rib, that the jury needed to hear more evidence to understand why that injury only appeared days later. Without that, Ms. Shimokawa only suffered bruising, which is insufficient to reach the level of great bodily harm. Even if the fractured rib is taken, that set of injuries is still more similar to where the court has found bodily harm and not great bodily harm. All right. And finally, talk to me about the Krenkel issue. Did the defendant actually say his counsel was inadequate to the court, or why should the court have held a Krenkel hearing? So in this case, Mr. Gibson filed a pro se post-trial motion arguing specifically that his counsel was ineffective and listing a series of pieces of evidence that he felt should have been used at his trial. And the court specifically to this motion stated, the court does not consider pro se pleadings by represented defendants. So that motion to reconsider is denied. The court here, I think their statement evinces that they failed to satisfy Krenkel's purpose completely by not considering any of the contentions in Mr. Gibson's motion. The state argues that the court's comments about the Snapchat video satisfied Krenkel, but the discussion of the Snapchat video didn't resolve any of the other claims, nor did the trial court engage in any kind of inquiry with Gibson or his attorney. So I think, yeah, the treatment of this motion runs directly counter to Krenkel, and it should be remanded for preliminary inquiry. Does the fact that he was represented by counsel and filed a pro se pleading have any effect on this? Not on Krenkel. Krenkel still requires the court to consider the, especially in specifically this case, an ineffectiveness claim, regardless of whether Mr. Gibson was represented. Okay. I see your time has expired. You'll have a few minutes. Justice Moore? Any questions? No questions. Justice Welsh? Yes. Were there some questions as to the ownership of the vehicle? Mr. Gibson is the registered owner. However, he testified that he and Mr. McMillian purchased the car together. No further questions. The ownership of the vehicle, as far as the title goes, it was the defendant, right? Yes. Was that not brought out? Uh, he was the registered owner. So yes, on the title, I believe that means, right? Okay. All right. Any further questions, Justice Welsh or Justice Moore? No further questions. No further questions. Okay. Ms. Ward, you'll have a few minutes after Mr. London argues. Mr. London, what do you have to say on behalf of the state, sir? Morning, Your Honors Counsel. Richard London on behalf of the state of Illinois. Your Honors, I will basically try to respond to the questions that Justice Cates was raising. Everything else is, I believe, effectively covered in my brief. The fact is that the video, there was not a lot of argument in one way or another, but it was not demonstrated at any point in time other than defendant's self-serving testimony that that was a photo taken from earlier that day. This court can look at the photo and note that, as Your Honor mentioned, there is no date or timestamp, which we point out in our brief. As a result, it was a matter of credibility for the jury to determine if indeed that had any relevance whatsoever. And the people would argue that it has no relevance. It wasn't challenged below as to whether it was or wasn't, but it also wasn't confirmed that there was any support. Mr. London, the defendant had on a fairly unique coat, did he not? Correct. Is that viewed in the Snapchat video? Or the photograph? Yeah, let me look specifically. Yes, certainly doesn't appear to be so. I mean, at least you cannot tell from the Snapchat video. There's also a fact that, and actually defendant points out in their brief, that there's a discrepancy between the testimony of the witnesses and the Snapchat video, in that the photo shows both the defendant and Mr. McMillian had distinctive ball caps, which we note that the videos don't show. So the fact that they had ball caps, which you don't see in the video, and the fact that you cannot tell that distinctive black and white coat seems to dispute the fact that the photo was actually taken that same day. But that wasn't raised by the state at trial? Correct, correct. I mean, it's one thing to raise it on appeal, but it wasn't raised before the jury. Correct. The jury had what the jury had. They had the testimony. And again, which to be honest, is kind of why the people focus on the fact that what the jury had in front of it, and which we believe was very strong evidence, was that the driver had dreads, period. We're not focusing on, and I don't think the jury focused on, and to be honest, the argument of the state did not focus on what the defendant was wearing. It was simply that the driver had dreads and that two unbiased witnesses stated that. Now, I understand that Mr. Gibson appeared the same at trial as he did in the car, and yet nobody identified him at trial. Again, when you say appeared, I don't know about his hairstyle, for example. So I am not certain if the record does reflect that. Yes, there was no in-trial identification. To be honest, the people would suggest that that actually bolsters the veracity of the two witnesses. They weren't going to suggest that they could identify defendant's face. They didn't testify at trial. They didn't indicate to the officers that they saw his face, which does make sense because the car was indeed traveling at a great rate of speed. So the fact that they testified what they saw, no more, no less, which is they saw a driver with dreads waving. So how does the state make the connection between a driver with dreads and this defendant? The driver with dreads and then the only person in dreads on the video. So that is the link. Another passenger in the car with dreads. I would, with all due respect, suggest that that is not an accurate statement. I do not believe that Mr. Griffin had dreads. I am not an toughs of hair. Two, there is virtually no way both witnesses testified that they could really not see the people in the back. One was not even certain that there were people in the back. The other said she believes there were one or two people. When the pictures of Mr. Griffin and the video of Mr. Griffin shows that he had a big black puffy coat that was covering his hair, it is virtually, not impossible, but virtually impossible that they would have seen those two toughs moving in the backseat period, much less with that puffy coat on. But again, that goes to front of the jury or speculative. That was also raised for the first time on appeal. There was no discussion by the defense at trial that Mr. Griffin's hair could be considered dreads. That was again raised for the first time by counsel on appeal after, you know, viewing that video. It seems so that the officer is the one who made the connection between the driver and the defendant through this unknown witness. Your Honor, that is arguably the most limited link that I've possibly ever seen. The officer said nothing more or less than the eyewitness pointed somebody out and as a result I talked to defendant. Didn't say they pointed defendant out, didn't say, and I quote the exact language in our brief, it was literally no more or less than exactly what the police conduct exception to the hearsay rule is, which is saying here's why I talked to defendant as opposed to why I other people. There is no prejudice. There is no limitation. And while defendant makes argument that, you know, my pointing out, the people pointing out that this was most likely Ms. Brown, that is a reasonable inference because Ms. Brown was asked, did you talk to the police? Yes. Did they ask you if you pointed out the driver? Yes. So this is not an unknown individual. It is almost certainly Ms. Brown. Is that speculative? No. Is it a reasonable inference? Yes. Unlike the suggestion in the reply brief that, well, the jury based their, or that was their major concern. The jury asked a question as is typically the case. There was no objection to the court saying, jury, you know, you have all the evidence in front of you. You can consider as you see fit. I will skip briefly to the great bodily harm issue. There is nothing in case law that requires the people to put on evidence of how or why an injury would occur or causation. The Steele case that defendant refers to is readily distinguishable. In that case, there was no evidence of injury, period, other than the victim. The medical evidence, there was no medical evidence. The medical evidence simply showed that there were bruising. The victim then got up in the stand and said, well, I had ribs, I had tears, I had ligament damage. There was no evidence whatsoever. In our case, their evidence was stipulated to have broken ribs. Yes, there was a nine-day delay. Yes, there was no explanation of why it wouldn't have shown up The victim testified as to what it was. Broken ribs is clearly sufficient to establish great bodily harm. And most importantly, the fact that broken ribs showed up, indeed, nine days later, didn't show up initially, you know, there was a stipulation as to the actual damage. My time is up. I don't know if the court would like me to discuss Krenkel. I don't need that. Justice Moore, do you have questions? No questions. Justice Welsh? No questions. Okay, Mr. London, thank you for your arguments. Thank you. To begin, looking at the Snapchat photograph with regard to your Honor's question about the unique coat, the photo does show that Mr. Gibson is wearing the white-sleeved, dark-bodied coat. And counsel's suggestion that the discrepancy between the photo and the witness's descriptions only shows further that the witness's descriptions here were unreliable. And the fact that they couldn't identify Mr. Gibson at trial in no way supports that their testimony about his description is more reliable. Mr. Gibson indisputably looked the same as he did on the day of the crash. There was testimony that he did, and yet they were not able to identify him as the driver of the car. The fact that both witnesses testified to the driver having dreads doesn't carry the state's burden to prove that Mr. Gibson was driving here, especially when considering that he had those dreads on the day of trial, and the state's witnesses were unable to identify him. Further, the tufts of hair coming out of Nicholas Griffin's head, while they may not be defined as dreads, they certainly could have looked like them to the witnesses, who only had a fleeting opportunity to view the car that was swerving, moving quickly while the witness's attention was distracted. With regard to Officer Joseph Cassidy's testimony, it's clear from the record that he is referring to Mr. Gibson, and it is the only identification of Mr. Gibson as the driver at trial. The jury question here cannot be minimized. It's clear that they focused on this identification of Mr. Gibson, and that they were grappling with the issue of whether Mr. Gibson was driving the car, and that this piece of evidence pushed it over the edge for them. I think the prejudice here is clear to Mr. Gibson that this statement, which the state doesn't contest with hearsay, was inadmissible, and it was on the only issue at Mr. Gibson's trial. To suggest that the course of investigation exception applies is not accurate. The jury simply didn't need to hear that anyone identified Mr. Gibson to understand why the police went to the hospital to talk to all of the occupants of the Impala. And furthermore, the exception doesn't allow the substance of a statement to be admitted, so the fact that a witness identified Gibson as the driver would not be admissible. All that would be admissible is that someone was identified as the driver, and that's not what was testified to here. Well, wouldn't it be allowed the officer to come in and say, a witness came up to me and identified the defendant? You can't say that? No, not if the witness is unknown, as the witness is here. The witness needs to be subject to cross examination on that statement. This was basically what convicted Mr. Gibson, and he wasn't even allowed to challenge this identification. And so, you know, I think he suffered prejudice here because of that. So if this court has no further questions, Mr. Gibson would request that his convictions be reversed because the state failed to prove beyond a reasonable doubt he was the driver. Alternatively, Mr. Gibson should have a new trial because he was prejudiced by the hearsay identification admitted against him on the only issue at trial. And finally, if this court doesn't reverse his convictions or grant him a new trial outright, it should remain for a critical inquiry to address Mr. Gibson's claims of ineffectiveness. Thank you. Okay, thank you, Ms. Warder. Thank you, Mr. London. Thank you, Your Honor. Justice Moore, any questions? No questions. Justice Welch? No questions. All right. Thank you both for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course.